United States v. Molina-Villalobos 17-1411 My name is Tim Kingston. I'm here on behalf of the appellant, Mr. Molina-Villalobos. I'm pleased to present oral argument on his behalf today. As the court is no doubt aware, Mr. Molina is currently serving a mandatory minimum 10-year sentence in federal incarceration based on his conviction of his guilty plea to distribution of cocaine. In this appeal, the appellant submits that the evidence presented to the sentencing court should have led that court to not sentence the defendant to the mandatory minimum. Rather, he should have received a sentencing guideline sentence because he was eligible for the safety valve treatment. As I pointed out in the brief, if... He wanted the mandatory minimum. Pardon me? He wanted the mandatory minimum? No. No, he wanted the guideline. He wanted the guideline. If I misspoke, I apologize, Your Honor. Okay. All right. He wanted to be sentenced within the guideline because he was eligible, I believe, for the safety valve treatment in this case based on the evidence that was before the district court. If he had been sentenced within the guideline, Your Honors, it would have made a significant difference in his sentence. It would have guidelines, I estimate, at level 23, criminal history category 1, which would have yielded a sentence under the guidelines between 46 to 57 months. So it would make quite a difference if he had gotten a guideline sentence in the case. As Your Honors, I'm sure know there are five factors that apply to whether a defendant is eligible for guideline... eligible for the safety valve. The court found and the government agreed in the lower court that the first four of the factors had been met, that there was... he wasn't a ringleader or a leader organizer of the conspiracy. There was no threat of violence or use of violence on the defendant's part. No one was... there was no death or bodily injury. Rather, the... Well, there's no issue on any of those first four. That's correct. So let's go to the fifth. Yes, I will. The fifth one had to do with whether the defendant or the appellant told everything that he knew to the government and to the court prior to his sentencing in the case. And I would submit that the evidence shows, and if the court applies the clear error standard of review, which is that if the record shows that there was a no factual basis for the court's finding, that he wasn't eligible for the safety valve, or looking at the entire case, looking at everything that's presented, if this court is to find that there was a mistake, a clear mistake made by the sentencing court, then the court may reverse and remand the matter for resentencing under the guideline. What do you do about the district court's finding with respect to his credibility? The court found he lacked credibility. How do we... The credibility finding, in my view, Your Honor, solely went to the question of why he became involved in the conspiracy. The district court said that he didn't tell enough about his own personal involvement or how he became involved. So the court found that he undervalued, understated his own participation, in part. I would say that is what the court found. And doesn't that go to whether he's credible if he didn't tell the whole story about himself? Yes, as a general proposition, Your Honor. But I would submit under, I don't know if Your Honor has gone through the transcript of the debriefing that he had when he was arrested, which is the primary evidence that was before the district court. And we also have what he stated in his revised change of plea, factual basis of his change of plea, where he described that he had had an accident when on the job, a legitimate job, where he badly hurt his back. That was accepted by the court. That was not argued. What's that have to do with anything? The court found that he was not credible, that he didn't, he shaded everything in his own favor. He told him that the, he didn't know what was in the bricks. The court found that to be incredible. I didn't hear the court. The court said that he he claimed not to know what was in the bricks. And of course, that's incredible. He said he was going to Kansas to get therapy rather than delivering drugs. And that was incredible. So, I mean, there's a lot of areas that he didn't seem to pursue it. And I don't know why he didn't. Why he didn't sit down after his initial arrest and unload on the on the offices about what this was all about. He was going to plead guilty and seek a safety valve adjustment. Well, I believe, Your Honor, that the lower courts credibility finding was looking at the entire body of I'll call it evidence that was presented to the court was simply incorrect. Mr. The appellant in the matter, when he was debriefed by the agents, told them that he was delivering cocaine. He told them that he was delivering drug money that came from the sales of cocaine, large amounts of it. We didn't say who recruited him. He didn't say how he became involved. He denied being paid any money. He claimed not to know what was in the bricks. I mean, why did he not develop? Why don't you just rely on what he told the arresting officer? I cannot answer specifically that latter question that you raised, Your Honor, as to why he didn't do it again, so to speak. But I respectfully disagree with Your Honor's reading of what the evidence was. If you look both at what he said to the agents as well as what he said in his revised factual basis where he specifically said that I was involved in delivering cocaine in the Denver area. I was involved in taking other members of the conspiracy from place to place while they were delivering cocaine. At no point in time did he say I wasn't involved in the conspiracy or that I wasn't involved in delivering cocaine. This one statement about I didn't know what was in some bricks was then, I guess I would say, contradicted by him when he says in other points during the debriefing by the agents that he was delivering cocaine. And when he said in his revised factual basis that I was delivering cocaine. The there is this puzzling issue about him going to Kansas and what he was doing there. I accept that. I cannot obviously can't avoid that question, but I don't think it is important in the overall scheme or the overall circumstances of this case. He told the debriefing agents that, as I said, again, everybody accepted that he heard his back. He needed to make some money in order to because he wasn't getting money from his work anymore. The only statement I want to pick up on something you said, Your Honor, was that he never said I wasn't making any money. What he said was I have I have no money at the time that he was debriefed by. I think he said I don't even have any money when he was debriefed by the agents. I bet that's a transcription error. But putting that aside for a moment, that doesn't mean that he was denying that he ever had any money. The agents knew found ten thousand dollars in where he lived when they searched that place. So I don't think it's correct. She did have money. Correct. Correct. I think, like I said, this is one cryptic statement. This one cryptic statement during the debriefing that I don't even have any money. Did he mean he didn't have any money because he was injured and couldn't. That's the way I would read it. And I was as a favorable interpretation of it with regards to the defendant, to the appellant, that he didn't have any money. And that's why he became involved. The problem is the district court heard the testimony. Pardon me, Your Honor. Does this court hear the testimony? Well, there wasn't testimony rather. So he was looking at what we'll be looking at. Right. Everything that was before the district court is before this court. The your review of the matter is de novo, I would say, because you're looking solely at the transcript of the interview. And you're looking at the change of plea transcript. And you're looking at the revised factual basis, that written document. Well, I would beg to differ with that. And that's kind of my problem with your argument, is that we review for clear error on factual determination. So even if we agreed with you on all of these points and disregarded what Judge Kelly and Judge Siegel have highlighted, I still fail to see where the error is so manifest, so clear that we should reverse the district court. That's where's the clear error here. In my review of Judge Moore's extended analysis of what was before him, he fixed on the question of how this defendant, the defendant was in front of him, got involved, became involved in the conspiracy. And that was, in my view, the primary issue that the judge found a problem. I would submit, if you look at the entire body of evidence that was before Judge Moore, he was provided ample evidence of his direct involvement in what the conspiracy was doing, of how he specifically. Yes, but as my colleagues have noted, he didn't elect to accept and or findings buying those theories. He went further and said, I'm not sure I agree with this. I think he's misleading on that. He wasn't fully disclosing, if I'm getting my syntax correct here, of his involvement and so on and so forth. And when you get that, it seems to me you get more into the discretionary area rather than into clear error area. And you'd almost have to prove abuse of discretion to us. It seems to me. Well, I think it's straightforward, clear that it's a clear error standard that applies. I mean, this Court's ruled that in many, many cases that are before the Court. I guess I would just maintain my position, the appellant's position, that looking at the entire case, the Court should not have found, and I believe this Court should reverse, as to the question of the small question, what I would say the insignificant question of how this particular defendant became involved in the conspiracy. I just think it's ultimately an insignificant issue with regard to the entire matter. Did you request an evidentiary hearing? Did he? I don't believe that he did. Oh, you didn't represent him below? I did not, sir. All right. Because, and I think one of the problems the Court had was nobody else was, he took all the blame himself. That was good. But he never said that Joe Doakes is the ringleader or that Sam Smith was also involved in this. He didn't give any information about the overall conspiracy. I respectfully disagree, Your Honor. He identified Mr. Lozano, whose case will be heard today, as the overall head of the conspiracy. And he specifically described what he did for Mr. Lozano and what he did for other members of the conspiracy, the various acts. Did he name all the other members of the conspiracy? He named quite a few, yes, Your Honor. I set forth in the brief a laundry list of the specific disclosures that he made about the conspiracy and what it was doing. So I believe he did not just take it on himself. But I think he was right. Correct. Pardon me. I think you want to reserve time. Yes, I will. I guess I have two minutes left. Thank you. Thank you, Your Honor. Farley, good morning. Good morning. I may have pleased the court. Paul Farley for the government. The district court explained that while the defendant had provided some information about the conspiracy, it could not find that he had provided all that he had. And the court gave what it called a few examples. The defendant avoided responding to questions concerning who had recruited him into the conspiracy. Instead, he had said that he had injured his back and felt as though he had no choice. The defendant denied that he was getting paid, which the court found to be implausible. The defendant claimed that he wasn't sure what was in the bricks that he was transporting, which the court found to be incredible. The defendant claimed that he made overnight trips to Kansas to get therapy for his back, which the court found to be implausible. In sum, the district court found that while the defendant was truthful in a number of things, he was not truthful in all things. And this finding is amply supported by the record. Repeatedly and at length, the interviewing officers had to resort to leading questions to pull information from the defendant, even information they already knew. And the defendant refused to meet with agents for a formal debriefing to follow up on gaps in his post-arrest interview. So on the face of it, the district court heard the evidence, made the findings, and we can drill down on the change of plea hearing, transcript, and the revised factual basis, but neither of those supplement the post-arrest interview. For example, at that sentencing, the defendants didn't even mention either change of plea hearing or the revised factual basis. We still have not, either in the sentencing hearing or even in the briefing, identified particular specific facts that were brought out at the change of plea hearing that meaningfully supplements the post-arrest interview. Now, was he asked to speak with the officers again and let them question him? Yes, they did ask him, and this is in the supplemental volume two, pages 28, 136, and 251, where the officers did request to meet with him again, and he refused. And the government opposed the safety valve. They enumerated six, and I won't give these to the court unless you want them. They're all on the record at supplemental volume two, page 250. They had six particular things that they opposed the safety valve on, saying we wanted to know about this, we wanted to know about this, we wanted to know about this. It would have been good to talk to him. So they were very clear about that. But I also wanted to draw out the Cervantes case, which we provided in the 28J, that when the government doesn't recommend a safety valve, defendant needs to put on evidence at the sentencing hearing to meet his burden of showing that he truthfully and fully disclosed everything he knew and to rebut government claims to the contrary. And here, the defense at Cervantes, 10th Circuit, 2008. In this case, the defense didn't put on any evidence at sentencing, no documents, not even testimony that might bolster his claim that the defendant simply couldn't remember anything more, for medical reasons or whatever. And, in fact, when the defendant himself spoke to the court, he said he accepted responsibility, apologized, and he sat down. So I think this one's fairly clean and straightforward, that the defendant did not give everything he knew, had opportunities to do so, declined to do so, and then there was nothing further offered at the sentencing hearing. You say to his argument that how's the defendant at this post-arrest interview supposed to know? He's given the name of the boss of the thing. How's he supposed to know how much he's supposed to say if he's not civically asked? Well, even at the post-defense interview, Your Honor, again, we see the defendant being evasive about, you know, so what are in these bricks you're putting in the car? I don't know. They're drugs, right? Well, I guess so. I mean, so he's bobbing and weaving, even on the fundamentals, things that the law enforcement officers already know. Certainly, if he was concerned that he wasn't feeling well that day or that maybe he hadn't given full disclosure, when law enforcement requests to do a follow-up. Or he had a head injury, which he didn't know about then, right? Right. So there's sort of that raises its head sometimes and then kind of comes back. He talked about pain sometimes, but then he also talked about memory loss, which are two different conditions. And it's not clear which one he's hanging his hat on. But again, there were opportunities to do this. And at a minimum, at the sentencing hearing, could have brought in a medical expert to say, look, this is his situation. This is why he was unable to tell you anything more, why he cannot remember anything more. And that didn't occur. And I think that the Cervantes case certainly is dispositive on that, even if we have doubts about the district court's actual findings. So are there any particular questions? All right. We would ask that you affirm. Thank you very much. Thank you for yielding the remainder of your time, counsel. Thank you, Your Honor. I'll first address the Cervantes case, which is found at five. Nineteen. After twelve. Fifty four. Tenth Circuit case of 2008. I don't believe it is applicable here in Cervantes. The sentencing court was faced with the only evidence that it considered and had presented to it was not evidence, but oral argument by the attorney for the defendant in the case, and some statements that the defendant had made to the probation officer during, when he was interviewed as part of the preparation of the pre-sentence report. And what the court in Cervantes found was that the statements made to the probation officer were not statements given to the government, as would be required for safety valve treatment. They were just kind of a separate set of statements. And then the court remarked that counsel's argument to the court for sentencing certainly wasn't evidence either. So from those facts, the court then said, well, there's got to be more. You've got to present some evidence to us that would show that this particular defendant or appellant was entitled to treatment under the safety valve. So I don't believe that it is on point. Well, I think the court in Cervantes did say, absent a favorable recommendation from the government. Correct. Which is this case, right? Yes. But, right. But what it was faced with was that paucity of any kind of evidence whatsoever that it could reasonably rely on to. Well, your position seems to be that because your client didn't put on any other evidence, that the government must have had to have put on evidence to show what he didn't know or didn't tell them that he knew about. And that is an impossible situation if you're sitting there as the judge. I would say, Your Honor, respectfully, that is definitely not the appellant's position. We're relying, he's relying on. I don't understand what he's relying on. The court specifically found that he didn't level with them all the way. And he didn't jump up and say, oh, well, let me tell you more. He just said, well, I told him at the interrogation everything I'm going to tell him. Based on what the argument I've given before, I believe that if you look at the entire body of evidence, the credibility issues that you've raised were not significant with the scheme of what he overall told. Thank you. I'm out of time. Thank you, counsel. Counsel are excused.